## Commonwealth v. Mazzatosta

*Peter Olszewski, district attorney* and *Ingrid Cronin, assistant district attorney,* for the Commonwealth.
*Carl J. Steinbrenner,* for defendant.

MUNDY, *J.,* December 22, 1993—This matter comes before the court as a result of a number of motions and memoranda filed by both the Commonwealth and the defendants. They are as follows: Commonwealth's

petition for revocation of accelerated rehabilitative disposition or, in the alternative, to schedule a restitution hearing; defendants' motion to dismiss charges pursuant to Pa.R.Crim.P. 185; defendants' pre-restitution hearing memorandum; Commonwealth's restitution hearing memorandum; and, Commonwealth's supplemental restitution hearing memorandum. Essentially, the "defendants," Thomas Mazzatosta and John T. Luke, are challenging the Commonwealth's attempts to secure restitution from them and have challenged both the propriety of any restitution order and the ability of the Commonwealth to proceed on such a request in light of the expiration of the two-year period of the ARD program.

The allegations are essentially as follows: defendants are shareholders of John T. Luke & Son Inc., a franchise sales and service agency for food equipment, scales and refrigeration. Tammac Corporation is a diversified financial service company which provides various services including equipment leasing, auto leasing, mobile home financing and credit reporting. Tammac employee Al Gerstle was in charge of equipment leasing and had as part of his duties the oversight of the documentation, invoicing, and receipt of equipment sold to and leased by Tammac. John T. Luke & Company, upon the proposed lease of certain equipment by third parties, would present applications for the leasing of said equipment by the prospective lessee to Tammac for approval or denial. Mr. Gerstle would forward these applications to a lending institution for a credit review of the third party lessee and would then receive a response that the applicant was either approved or rejected. If approved, Mr. Gerstle would proceed to conclude the lease between the third party and Tammac and pay defendants for the equipment. It is alleged that in July of 1987, Mr. Gerstle and the defendants agreed that all future proposed equipment invoices would be inflated

by 6 percent. Mr. Gerstle would receive 1/4 of the 6 percent as his commission for timely processing of the application and handling other additional paperwork.

By private criminal complaint, each defendant was charged on February 6, 1990 with forgery, securing execution of documents by deception, theft by deception, deceptive business practices, tampering with records of identification and criminal conspiracy.[1] On February 22, 1991, defendants were each accepted into the ARD program for a period of two years. As a condition of their acceptance into the ARD program, each defendant agreed to make restitution in an amount to be determined by the court at a later date. Mr. Gerstle was also charged and likewise admitted into the ARD program.

Two restitution hearings were scheduled and subsequently continued by agreement of the parties. A third restitution hearing was scheduled for October 5, 1992, but in a pre-hearing conference, several issues were raised relating to whether or not this court has jurisdiction to schedule a restitution hearing given the fact that the defendants have, with exception of making restitution, completed the ARD program. Briefs having been submitted, and oral argument having been held, this court will now address the jurisdictional issues raised by the defendants.

We begin our discussion of the pertinent law with a review of the nature of the ARD program. The Superior Court in *Commonwealth v. Feagley,* 371 Pa. Super. 593, 598, 538 A.2d 895, 896 (1988) succinctly explained the program in this way:

"... ARD is a *pre-trial* diversionary program in which the district attorney agrees to suspend prosecution of a defendant contingent upon that subject's successful participation in a program of rehabilitation. If ARD

---

1. 18 Pa.C.S. §§4101, 4114, 3922, 4107, 4104, 903.

is not completed successfully, the defendant may be prosecuted upon revocation of his participation in the program. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985). The purpose of this *diversionary* program is to attempt to rehabilitate the defendant without resort to a trial and ensuing conviction. During this time, the criminal proceedings are held in abeyance pending successful completion of the program or revocation for violation of the conditions. *Commonwealth v. Krall,* 290 Pa. Super. 1, 434 A.2d 99 (1981).... Acceptance of ARD is not the equivalent of a conviction, nor does successful completion of the program result in an acquittal." [2] (emphasis in original)

In situations where a defendant is dissatisfied with the terms and conditions of the ARD program as it applies to his or her own case, the Pennsylvania Rules of Criminal Procedure provide the appropriate avenue of relief. Pursuant to Rules 179(d) and 183, the defendant must notify the trial court and the district attorney of his discontent. The trial court may then deny the Commonwealth's motion for ARD, or in cases where the defendant becomes dissatisfied after the motion is approved, the trial court may enter a non-appealable interlocutory order terminating the defendant's participation in the program. The case then proceeds in the same manner as if these proceedings had not taken place. *Commonwealth v. Getz,* 410 Pa. Super. 28, 598 A.2d 1309 (1991); *Commonwealth v. Feagley, supra.*

Pa.R.Crim.P. 184 directs the Commonwealth, should a violation occur, to file a motion alleging such violation. This motion must be filed during the period of the program or, if filed thereafter, must be filed within a reasonable time after the alleged violation was com-

---

2. ARD acceptance is the equivalent of a conviction only for the purpose of sentence enhancement for subsequent convictions. *Feagley, supra* at 598, 538 A.2d at 897.

mitted. Once brought before the court, the defendant is given the opportunity to be heard. If the defendant is found to have committed the violation, the court may order the program be terminated and direct the Commonwealth proceed on the charges as provided by law. This is an unappealable order. Pa.R.Crim.P. 184.

With regard to restitution, the statutory authority for its imposition as part of a sentence is found in 42 Pa. C.S. §9721(c),[3] and 18 Pa.C.S. §1106. The latter statutory enactment provides, inter alia, the method and manner of payment, the factors the court should consider in determining whether or not to order restitution, and the consequences for failure to comply. Subsection (h) contains definitions and subsection (g) reserves the victim's right, regardless of any judgment or order of restitution, to recover from the offender as otherwise provided by law, provided that any civil award be reduced by the amount paid under the criminal judgment.

Case law addressing the issue of restitution provides further guidance. In *Commonwealth v. Valent,* 317 Pa. Super. 145, 463 A.2d 1127 (1983), the court, citing a long list of Superior Court cases, explained that restitution may be imposed either as a direct sentence or a condition of parole, but in either event, the order must be supported by the record. *Commonwealth v. Galloway,* 302 Pa. Super. 145, 448 A.2d 568 (1982); *Commonwealth v. Wood,* 300 Pa. Super. 463, 467, 446 A.2d 948, 949 (1982); *Commonwealth v. Seminko,* 297 Pa. Super. 418, 420-421, 443 A.2d 1192, 1193 (1982); *Commonwealth v. Erb,* 286 Pa. Super. 65, 81, 428 A.2d 574, 582 (1981); *Commonwealth v. Fuqua,* 267 Pa. Super. 504, 510, 407 A.2d 24, 27 (1979). A court must

---

3. Section 9721(c) empowers the court to order the defendant to compensate the victim of his criminal conduct for the damage or injury he sustained.

consider (1) the amount of loss suffered by the victim; (2) the fact that defendant's action caused the injury; (3) the amount awarded does not exceed defendant's ability to pay; and (4) the type of payment that will best serve the needs of the victim and the capabilities of the defendant. *Commonwealth v. Wood, supra* and *Commonwealth v. Fuqua, supra.*

In their pre-restitution hearing memorandum, defendants argue first that in the absence of a record to support an order of restitution, the court is jurisdictionally precluded from making such an order. *Commonwealth v. Balisteri,* 329 Pa. Super. 148, 478 A.2d 5 (1984). Because an ARD record is closed when the facts are presented and placement in the ARD program is not a finding of guilt, defendants suggest the conclusion that with no record having been created during their ARD hearing, the court has no authority to order restitution. In the alternative, defendants contend that since ARD placement merely suspends prosecution, to compel them to now appear for a hearing where they will necessarily be presenting evidence against themselves would be prejudicial to their interests.

In response to this argument, the Commonwealth suggests, and we agree, that while the defendants would need to testify at such a hearing, it would be for the limited purpose of addressing the considerations required by law; *i.e.,* the extent of the injuries suffered, the causal connection between the defendant's action and the injury, the type of payment that will best serve the needs of the victim, and the capabilities of the defendant. *Commonwealth v. Fuqua, supra.* To suggest that because it would be a separate hearing from the initial ARD hearing, and that statements made during the course of it would be subject to use by the Commonwealth should they proceed to trial on the charges, would defeat the whole purpose of the ARD program and we believe violate Pa.R.Crim.P. 179(b) which ad-

dresses that issue and mandates against such practice. Nor do we think that the absence of a record upon which to order restitution jurisdictionally precludes this court from doing so. Should we order a restitution hearing, the necessary record can be established. In light of that, we see no prejudice to the defendants should a restitution hearing be ordered.

Defendants' second argument questions whether Tammac Corporation is a "victim" under 18 Pa.C.S. §1106(h), which specifically excludes "an offender" from the definition of "victim." That subsection defines a "victim" as "any person, except an offender, who suffered injuries to his person or property as a direct result of the crime." "Offender" is defined as "any person who has been found guilty of any crime." Citing principal/agency law, defendants suggest that Tammac is an offender because their employee, Al Gerstle, as an agent of Tammac vested with broad expressed authority and holding a position of some responsibility, performed a criminal act related to the corporate principal's business and to his own duties. *U.S. v. Johns-Manville Corp.*, 231 F. Supp. 690 (E.D. Pa. 1963), 18 Pa.C.S. §307(a)(3); *Commonwealth v. Penn Valley Resorts Inc.*, 343 Pa. Super. 387, 494 A.2d 1139 (1985).

The Commonwealth counters and once again we agree, that not only has Tammac not been "found guilty of any crime" as required by section 1106(h), it has been neither charged nor convicted of a crime. Moreover, in the cases cited by the defendants, the corporate entity was not the victim. In *Commonwealth v. Penn Valley,* the court considered whether a corporation is a "person" under the Crimes Code and held that for criminal culpability purposes, the term "person" includes a corporation. The court noted that the principle of criminal accountability of corporations has been held to apply to all offenses set forth in the Crimes Code.

We believe that the logical extension of that would be that a corporation would also be considered a "person" when that word is used to define a "victim" in the Crimes Code. As to the principal/agency issue raised by defendants herein, while it is true that a corporation can be criminally accountable for the actions of a "high managerial agent" who commits a wrongdoing in the scope of his office, and the corporation need not affirm, condone, or sanction the criminal action in order to be held criminally accountable, we do not agree that Tammac can be considered an offender and find the definition of "offender" to be controlling on this point. Section 1106(h) clearly defines offender as any person "found guilty of any crime."

Lastly, defendants challenge the Commonwealth's attempt to secure restitution in an amount in excess of the 6 percent inflated amount. The Commonwealth in response contends that the admissions contained in the defendants' ARD applications make no reference to specific percentages, but merely state "a percentage of the profit." The Commonwealth intends to show at any restitution hearing that the inflated amount and the resultant losses to Tammac were far in excess of the amount claimed in defendant's memorandum. We will address this issue at a later time.

Having reviewed the various documents presented, together with the procedural and statutory rules and pertinent case law, we believe the two competing issues to be: (1) are the defendants precluded from now objecting to restitution because they previously accepted and agreed to it as a condition of their ARD; and (2) has the Commonwealth in some way waived its right to enforce the restitution provision of the ARD program because of its unreasonable delay in proceeding. In addressing these competing interests, we are guided by Pa.R.Crim.P. 183 and 184 which provide, respectively:

"Rule 183. Procedure Upon Refusal to Accept the Conditions.

"If a defendant refuses to accept the conditions required by the judge, the judge shall deny the motion for accelerated rehabilitative disposition.

"In such event, the case shall proceed in the same manner as if these proceedings had not taken place.

"Rule 184. Procedure on Charge of Violation of Conditions.

"(a) If the attorney for the Commonwealth files a motion alleging that the defendant during the period of the program has violated a condition thereof, or objects to the defendant's request for an order of discharge, the judge who entered the order for ARD may issue such process as is necessary to bring the defendant before the court.

"(b) A motion alleging such violation filed pursuant to paragraph (a) must be filed during the period of the program or, if filed thereafter, must be filed within a reasonable time after the alleged violation was committed.

"(c) When the defendant is brought before the court, the judge shall afford him an opportunity to be heard. If the judge finds that the defendant has committed a violation of a condition of the program, he may order, when appropriate, that the program be terminated, and that the attorney for the Commonwealth shall proceed on the charges as provided by law. No appeal shall be allowed from such order."

Despite the arguments set forth by the defendants, we believe that their acceptance and agreement to the ARD disposition of their cases, with all of the conditions, precludes them from now objecting to one of those conditions. They had an avenue of redress in the event they did not agree that restitution be a condition of their acceptance. Were we to find otherwise, we would be sanctioning the practice of a defendant agreeing to

the terms of ARD merely to avoid a trial, and then biding their time, hoping the specified time expires only to present arguments as to the inappropriateness or invalidity of a particular condition.

On the other hand, we believe the Commonwealth is affirmatively obligated to formally motion the court for termination of ARD if they feel a violation has occurred. Here, the Commonwealth did file such a motion on the day the ARD time period expired. Said filing technically complies with the requirements of Rule 184(b).

Notwithstanding that some of the delays in proceeding to a restitution hearing were due to the Commonwealth's failure to acquire the necessary documentation in support of their position as to the amount of restitution owed, we believe that to excuse the defendants now from fulfilling what has all along been their obligation, one they accepted and agreed to, because of those delays, would be contrary to the intent and purpose of the ARD program. While a more expeditious process would have been preferred, the defendants are not completely without fault, and regardless of fault, we believe the greater harm would come from allowing the defendants to use the delays as an excuse to release them from what they clearly agreed to at their ARD hearing.

The bottom line is that the defendants made an agreement, received the benefits of that agreement, and are now attempting to procedurally avoid their obligations under that agreement.

As to defendants' argument regarding the amount of the restitution, that issue can be addressed at the time of the hearing since the amount of the loss suffered by the victim is one of the factors we are required to consider on the record at the time of the restitution hearing.

In light of the foregoing, we dismiss defendants' motion to dismiss charges pursuant to Pa.R.Crim.P. 185 and direct that a restitution hearing be conducted.

## ORDER

It is hereby ordered that a restitution hearing in the above-captioned matter is scheduled for Tuesday, March 8, 1994, at 10 a.m., in courtroom no. 3.